case this morning, which is Barnes v. Board of Trustees of the University of Illinois. Good morning, may it please the court. My name is Lou Anne Galevich and I represent the plaintiff appellant Gregory Barnes. The question before the court is whether the court erred in deciding the plaintiff failed to present sufficient evidence that he was discriminated against on the basis of his race. It's plaintiff's position that he was discriminated against when the board failed to promote him to a chief chancellor position. Mr. Barnes in 2016 January applied for the position of chief operating engineer at UIC. The position reports directly to the vice chancellor Mark Donovan. The operating engineer position is considered a civil service position and the individuals applying were required to take an exam along with completing an application and listing their qualifications. All applicants have met with the minimum scores and there were 11 who were placed on this list were put on the register. Of those 11 candidates, two of them were African-American, the remaining nine of them were not. Mr. Donovan, the vice chancellor, conducted the interviews himself. Plaintiff also interviewed with Mr. Donovan. Plaintiff was not advised to bring any documents to the interview, was not advised to bring anything else with him. During the interview Mr. Barnes... There's no evidence that Mr. Savito was advised to do so. There's no evidence that I am aware of. Mr. Savito did bring however documentation with him including his his application, his resume, and several other documents regarding his background and his qualifications and Mr. Barnes did not. During the interview Mr. Donovan asked Mr. Barnes to quote tell him about himself and generally explain what Mr. Barnes would do to help the university. Mr. Savito however was asked questions that were more tailored to scenarios as opposed to just general questions regarding his qualifications. Plaintiff was not selected for the position. Mr. Savito was. It's undisputed that the plaintiff was able to end summary judgment to establish that he was a member of the protected class and he was qualified for the position and that he was even rejected for the position. However, the employer promoted someone outside of the protected group who is not better qualified for the position according to the plaintiff. It's contention that he was better qualified. His evidence for this was more based upon his his his performance appraisal that he had received from his his supervisor which was not taken into consideration by Mr. Mr. Donovan when when considering the candidates. How can that be a factor if Mr. Donovan and I look at anybody's performance appraisals when making a determination here? He didn't look at anyone's performance appraisals however this so how can it matter then that the performance appraisal for Mr. Barnes the numbers were a little bit higher even though it was in the same class of doing fine but the numbers were a little bit higher. How can that matter if he didn't look at them? It matters when you look a little closer at the interview process itself and the problem with the interview process is that you have one interviewer. The interviewer is asking not the same questions of the interviewees. He's asking one an open-ended question whereas on the other side they're asking Mr. Civito specific scenarios that Mr. Civito can can reply to. He can give specific examples to as opposed to Mr. Barnes who has to consider you know everything in the realm of his background and try to figure out what it is that Mr. Donovan wanted to hear. Mr. Barnes is highly qualified. He's been doing this for many many years. The other African-American was doing this an engineer position for 30 years but neither one of them was called back for Additionally a problem with the interview process too. Previously there had been interviews including Mr. Donovan had said himself that he had been interviewed for positions and he had had more than one interviewer and that they were the same questions that were asked of him that were asked of others so the consistency wasn't there. There was more of an open availability so to speak for discrimination to creep in because there is only one person making that decision. You know there have been problems I believe Mr. Mr. Barnes being African-American there had never been a chief African-American in this position. Does the record in this case say that? Are those circumstances documented in this record? Yes your honor I believe it does and I will try to locate that but I believe it does. Or is there any reported case where we can take judicial notice of that? Unfortunately I do not have a case and I I'm not certain where it came from in the record but I know that somewhere in the record there was a statement that in the early 1990s there were problems with this particular department having issues with. I'm not really sure I see the relevance of all that with respect to this particular situation the hiring or not the promotion or non-promotion of your client which is the only thing we have here today. There's a history of there being problems in hiring for the positions and at the University and by putting in certain stop gaps you can prevent this discrimination or at least the appearance of discrimination from occurring and then you can go back and you can see you know why it was that Mr. Donovan selected Mr. Civito over Mr. Barnes or even over Mr. Jones for the position if there's certain stop gaps in place. Mr. Donovan's interview process is extremely subjective discriminatory in evaluation but Donovan did not look at any personnel files. He kept it personal to him. Of course they were both evaluated in the same basic category right they were just two points apart within that category. That is correct your honor they had the same supervisor as well. The interviewer indicated that he was not terribly impressed with job evaluations am I correct? I'm sorry could you repeat that? The interviewer. Mr. Donovan. He indicated that he wasn't terribly impressed with job evaluations. Correct he decided that he did not want to look at a job evaluations but regardless I mean you have an individual who had supervised both of these individuals both Mr. Barnes and Mr. Civito and had feedback to give and they were feedback based upon personal work knowledge of their work ethic and the stronger Mr. Mr. Barnes had stronger comments than Mr. Mr. Civito had from Mr. Barrett. I mean it's it's not surprising that Mr. Civito's interview would generate answers showing a more thoughtful approach as well if you're asking questions of the interviewees. You know when I was reading your brief what struck me on that point counsel was it well maybe these people were not similarly situated they had different backgrounds the questions very well might not be the same. They have the question should really reflect the person's background and what he brings to the job. If you ask the same questions of the two different people who are not similarly situated you really do an injustice at least to one of them don't you? The problem here is that Mr. Barnes's questions were more open-ended. They weren't more specifically tailored to scenarios such as and forgive me this is not necessarily a question that was asked to Mr. Civito but for example if the boiler breaks down and there's water pouring from the underside what would you do? That would be the type of a scenario. This is what happens and what would you do in that circumstance as opposed to tell me about yourself. Tell me about your qualifications. Why should you become be chief engineer? You seem to get a unless a person is prepared to answer those types of questions about himself without specifically being asked those questions you're going to lose as here a lot between the cracks. I mean Mr. Barnes didn't even get to talk about I believe he worked for a hotel Hyatt and he didn't bring that up as an example but yet it was something that's in his background that fell through the cracks and had the interview process been a little bit more equal then perhaps the results would have been different. Your time has expired. Thank you. Ms. Erickson. Good morning Your Honors. May it please the court. I will be arguing on behalf of the both defendants today. I want to start out by saying that in this case there's really no indicia in the record that race played any role in this promotion decision by Mr. Donovan. Mr. Barnes has admitted that Mr. Donovan has never said or done anything to lead Mr. Barnes to believe that Mr. Donovan would have considered his race in this decision. It is our position that the district court was correct in finding no evidence of race discrimination in the decision to promote Mr. Civito and to these and to that point I'd like to raise two points. One that Mr. Barnes failed to prove Mr. Donovan was more qualified than Mr. Barnes for the position and two Mr. Barnes did not establish that Mr. Donovan's non-discriminatory reason for promoting Mr. Civito was pretext or a mask for discrimination. To the first point Barnes did not prove that he's more qualified and in fact he admitted in his own testimony that he cannot say he was more qualified than any of the other ten applicants and despite this testimony even when you look at the record at the interviews Mr. Civito brought several materials which we've outlined in our brief and I just want to point out just for the record he had a manual that he created for his subordinates on a software program to help educate them and train them. He also had a specific training manual while he was at Midway Airport that he discussed with Mr. Donovan. He also brought his certificates for classes he took on leadership and customer service that he took on his own while he was employed at the University since 2011. Mr. Barnes did not bring anything to the interview. He was not prevented from bringing anything to the interview. He chose not to and he also didn't have any certificate classes since the 1990s. Now counsel has pointed out that Mr. Civito was asked specific scenario questions but that's not what the record shows today. The record shows that Mr. Civito testified he didn't recall what he was asked. All he knows is he discussed operations and to that end during the interview he discussed specific concrete examples of his experience as a senior lead engineer at Midway Airport and handling particular equipment at airports such as potable water and ground equipment ground electrical equipment and how that would apply to his experience if you were selected as the chief engineer. He also talked about his specific experiences at the University as an assistant chief and in contrast when you look at Mr. Barnes, Mr. Barnes did testify that he was asked to tell him about himself yet he failed to mention any of his experience as an engineer at the Sheridan Hotel and there's nothing in the record to show that he was somehow prevented from bringing this experience to the table during the interview. He was also asked what he would do to help the University and what he discussed was reducing costs, vendor costs, and dress codes for his own testimony. And as far as the performance reviews I don't think I have to say much on this. Mark Donovan did not feel that they were relevant. They were done by another supervisor for another position over a year and a half ago and he didn't understand what the scores meant so he didn't look at them. So I don't understand how the performance evaluations could somehow show that Mr. Barnes was more qualified when Mr. Donovan didn't even see them. Rather, Mr. Civito above all the other candidates demonstrated leadership organization and strong interpersonal skills. This brings me to my second point of there being no evidence of pretext or that Mr. Donovan lied for the reasons why he selected Mr. Civito and that it was really a mask for discrimination. To this point, Mr. Barnes relies on the interviews not being uniform as his main reason for pretext. How should that impact our analysis? Well, the fact that the interviews were conducted by Mr. Donovan himself and whether or not they were uniform, I don't know that the record fully establishes that because Mr. Civito didn't recall what he was asked and Mr. Barnes did not know how the interviews of the other candidates went, what was said. He didn't have any evidence of that. And so we only have what Mr. Barnes said he was asked, which is tell me about yourself, what would you do to help the University, and what Mr. Donovan said that he had asked. He has three questions. Tell me why you want the job, tell me essentially about yourself, and what would you do as the chief engineer. I don't think Donovan's testimony and Barnes' testimony are really that different for this case. And just because Mr. Donovan conducted the interviews himself based on his subjective evaluation without any evidence of any discriminatory intent, that doesn't necessarily make this decision unlawful. And Mr. Barnes admitted that Mr. Donovan has treated him well, and in fact it was Mr. Donovan who approved Mr. Barnes to be promoted to the assistant chief. And Mr. Barnes admitted that Mr. Donovan has never said or done anything that would lead Mr. Barnes to believe that Mr. Donovan would have considered race in the decision. Further, Mr. Donovan has a history of hiring and promoting and encouraging African Americans into key positions in the University. And I think this is really telling about who Mr. Donovan is, and I think it really belies plaintiff's position that there was some pretext in this case. As a few examples, Mr. Donovan promoted an African American to a chief of police position at the University. He also encouraged another individual, African American, to pursue a chief engineer position in 2007, but that particular individual declined. What's significant about that is this chief engineer position is a civil service position, and in the civil service system all of the individuals need to take an exam, they have to show that they meet the qualifications for the position, and they're put on a list. Mr. Donovan has no control over who's on that list. He has to interview all of them, but he can't control whether or not there are any African Americans on that list to be able to consider, and he did encourage African Americans to apply for these positions. He must interview who? Everyone? Everyone on the registered list from the civil service. He gets the list of who the applicants are that are pre-qualified and then he must interview those individuals. How far down the list does he have to go? The candidates with the top three scores. And he decided to do 15, right? 11. There were 11 candidates. So he went into the pool deeper than he had, right? Excuse me, all 11 candidates had the top three scores and that's how they ended up on the list, and then he interviewed all 11. I see. So they were all in that top three score category. I see. Yes, Your Honor. So to the plaintiff's point that somehow the fact that there are no African American chiefs, Mr. Barnes just does not have any evidence as to who was in the pool and what their qualifications are, how they interviewed and what that process was. And again, with respect to the interview process, there was no change. Counsel argues that Mr. Donovan changed the process. Well, under the civil service system, there is no required interview process. And in this particular case, the chief engineers all reported to Mr. Donovan. He has over 30 years experience as contained in the record, and he felt most comfortable in selecting the candidate. And again, the fact that he conducted the interviews by himself, without anything more, without anything to show that there was some sort of discrimination and intentional discrimination, it's not sufficient to show a pretext or that he lied about thinking that Mr. Savito was the best qualified candidate for this position. So I just want to conclude briefly. This case really isn't a case about race discrimination, but a case where unfortunately Mr. Barnes just didn't interview very well. And I'm sure that many of us in this room, I can include myself in this, have had an interview that didn't go very well. That doesn't necessarily make the process, the interview process, wrongful or the decision for the job unlawful or discriminatory. And Mr. Barnes' case is not a remedy for a poor interview. In sum, there's just simply no evidence of race discrimination in this case, and we would ask this honorable court to affirm the district court's opinion in properly granting summary judgment in favor of the defendants. I thank you for your time. Thank you. Ms. Galovic, your time had expired, so the case is taken under advisement. We'll move to our fourth case.